TERRI F. LOVE, Judge.
 

 _|jThis litigation involves a dispute over the award of a contract for a public works project at the Orleans Parish Criminal Sheriffs Office. Lemoine/Brasfield & Gorrie Joint Venture, L.L.C., brought suit against the Orleans Parish Criminal Sheriffs Office seeking to have the bid of Carl E. Woodward, L.L.C. rejected and seeking to be awarded the contract as the lowest bidder. Lemoine/Brasfield & Gorrie Joint Venture, L.L.C. now appeals the trial court’s judgment, which dismissed all of its requests for relief. We find that the OPC-SO acted in a fair and legal manner and not arbitrarily in disqualifying Lem-oine/Brasfield and affirm the trial court’s judgment.
 

 
 *1070
 
 FACTS AND PROCEDURAL BACKGROUND
 

 In 2009, the Orleans Parish Criminal Sheriffs Office (the OPCSO or Defendant/Appellee) advertised a bid solicitation from contractors in conjunction with the award and execution of a public works contract for the construction of a project entitled “Orleans Parish Criminal Sheriffs Office Kitchen Warehouse Plant” (the Project). Lemoine/Brasfield & Gorrie Joint Venture, L,L.C. 12(Plaintiff/Appellant or Lemoine/Brasfield) is a limited liability company (L.L.C.) comprised of two companies, The Lemoine Company and Brasfield & Gorrie, L.L.C. Appellant was the lowest numerical bidder, however, the OPCSO notified Appellant that its bid was rejected as not being a responsive bid, as Lem-oine/Brasfield did not have a contractor’s license separate and distinct from the individual licenses of its component companies. The OPCSO opted to award the contract to the second lowest numerical bidder, Carl E. Woodward, L.L.C. (CEW or Ap-pellee/Intervenor).
 

 Lemoine/Brasfield responded to this rejection by filing suit against the OPCSO; in its suit, Lemoine/Brasfield sought preliminary and permanent injunctions prohibiting the OPCSO from awarding the contract to any other bidder, an order of mandamus compelling the OPCSO to award the contract to Lemoine/Brasfield, and a declaratory judgment to the effect that any contract entered into between the OPCSO and CEW, or any other bidder, was null and void. In the alternative, Lemoine/Brasfield sought a monetary damage award. CEW intervened in the lawsuit, asserting that its bid complied with the public bid law.
 

 The trial court conducted a hearing on the motion for preliminary injunction and denied Appellant’s request for preliminary injunction. The trial court rendered judgment to that effect and, three days later, issued an amended judgment that differed from the original judgment only with respect to phrasing, not substance.
 

 Thereafter, the trial court made the denial of the Appellant’s request for preliminary injunction permanent pursuant to an agreement of the parties, and rendered a final judgment of dismissal. The trial judge ruled that:
 

 “1. The denial of the Preliminary Injunction by Judgment dated January 8, 2010, is hereby made permanent and deemed a final judgment.
 

 |s2. Plaintiffs Motion for Mandatory Injunction is dismissed as moot.
 

 3. Plaintiffs Petition for Injunctive Relief, Mandamus and Declaratory Judgment is hereby dismissed with prejudice with all Court costs assessed to Plaintiff.” '
 

 Lemoine/Brasfield appeals and avers that the trial court erred in denying its request for preliminary and permanent in-junctive relief and argues that the trial court’s judgment should be reversed. Lemoine/Brasfield further maintains that this matter should be remanded for judgment on the request for monetary damages.
 

 STANDARD OF REVIEW
 

 A public agency awarding a public works contract is vested with the power and discretion to determine the responsibility of the bidder and to reject all bids if none are satisfactory.
 
 J.W. Rombach v. Parish of Jefferson,
 
 95-829, p. 12 (La.App. 5 Cir.2/14/96), 670 So.2d 1305, 1310 (citing La. R.S. 88:2212). However, the agency’s discretion must be exercised in a fair and legal manner and not arbitrarily.
 
 J.W. Rombach,
 
 95-829, p. 12, 670 So.2d at 1310.
 

 On review of the state agency’s exercise of discretion determining whether
 
 *1071
 
 a bidder is the lowest responsible bidder, a court should not substitute its judgment for the good faith judgment of an administrative agency.
 
 Id.
 
 at p. 13, 670 So.2d at 1311. The agency’s reasonable good faith interpretation of its own specifications should not be disturbed by a court that may have different views.
 
 Systems Plus, Inc. v. East Jefferson General Hosp.,
 
 94-83, p. 11 (La.App. 5 Cir.5/31/94), 638 So.2d 404, 409 (quoting
 
 D.M. Clement Contr. v. St. Charles Parish,
 
 524 So.2d 86 (La.App. 5th Cir.1988));
 
 J.W. Rombach v. Parish of Jefferson,
 
 95-829, p. 13 (La.App. 5 Cir.2/14/96) 670 So.2d 1305, 1311. The duty of this Court is to determine whether the OPCSO acted in a fair and legal manner and not arbitrarily in ^disqualifying Lemoine/Brasfield.
 
 J.W. Rombach,
 
 95-829, p. 14, 670 So.2d 1305, 1311;
 
 B.F. Carvin Const. Co., Inc. v. Jefferson Parish Council,
 
 98-1189, p. 12 (La.App. 5 Cir. 5/19/99), 735 So.2d 859, 865.
 

 PUBLIC WORKS CONTRACT
 

 Appellant is comprised of two companies-The Lemoine Company and Bras-field & Gorrie, L.L.C. Appellant bid on the Project, and while Appellant was the lowest numerical bidder, the OPCSO declared Appellant’s bid non-responsive. The OPC-SO determined that Appellant did not have a contractor’s license separate and distinct from its two component entities and awarded the contract to the second lowest numerical bidder, Intervenor.
 

 Appellant contends that each of its component companies hold individual, valid contractor’s licenses, and Appellant maintains that because the companies formed a “joint venture,” Appellant was not required to obtain a separate license.
 

 Appellee contends that while Lem-oine/Brasfield submitted their bid under the name “The Lemoine Company, L.L.C./Brasfield Gorrie, Joint Venture L.L.C.,” Louisiana law does not recognize a “limited liability company joint venture” as an entity. Appellee argues that state bid law and state contracting law require that the entity that is awarded the contract be licensed, and the L.L.C. at issue does not meet this requirement.
 

 Louisiana’s Public Bid Law, La. R.S. 38:2212, et seq., “was enacted in the interest of the taxpaying citizens and has for its purpose their protection against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices.”
 
 Haughton Elevator Div. v. State Div. of Admin.,
 
 367 So.2d 1161, 1164 (La.1979). In enacting the public bid law, the legislature specifically prescribed the conditions under which the state will permit | ^public work to be done on its behalf or on behalf of its political subdivisions.
 
 Hamp’s Constr., L.L.C. v. The City of New Orleans,
 
 05-489, p. 4 (La.2/22/06), 924 So.2d 104, 107;
 
 Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.,
 
 04-211, p. 6 (La.3/18/04), 867 So.2d 651, 656.
 

 La. R.S. 37:2150 provides that:
 

 The purpose of the legislature in enacting this Chapter is the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract. Further, the legislative intent is that the State Licensing Boards for Contractors shall monitor construction projects to ensure compliance with the licensure requirements of this Chapter.
 

 La. R.S. 37:2151, et seq. provides for the creation of the State Licensing Board for Contractors, and La. R.S. 37:2153 sets
 
 *1072
 
 forth the powers and duties of the board and provides in part:
 

 The board shall have the power to make by-laws, rules and regulations for the proper administration of this chapter; to employ such administrative assistants as are necessary; and to fix their compensation. The board is hereby vested with the authority requisite and necessary to carry out the intent of the provisions of this chapter.
 

 In accordance with this statute, the State Licensing Board for Contractors enacted the State of Louisiana Contractors’ License Law and Rules and Regulations (Administrative Rules). Administrative Rule 1103 states:
 

 A. All licensed contractors bidding in the amount of $50,000.00 or more shall be required to have qualified for the classification in which they bid.
 

 B. When two or more contractors bid as a joint venture on any project in the amount of $50,000.00 or more, not in conflict with R.S. 87:2150 et seq., all parties are required to be licensed at the time the bid is submitted. Each party to the joint venture may only perform within the applicable classifications of the work of which he is properly classified to perform. (Emphasis added). |fiThe Louisiana Contractors’ Licensing
 

 Law, La. R.S. 37:2150, et seq., contains the following definitional provisions. In pertinent part, La. R.S. 37:2150.1(4)(a) defines contractor as:
 

 “... any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking ... (emphasis added)”
 

 La. R.S. 37:2150.1(9) provides in part that:
 

 “Person” means any individual, firm, partnership, association, cooperative, corporation, limited liability company, limited liability partnership, or any other entity recognized by Louisiana law ... (emphasis added.)”
 

 Appellee concluded that simply including the words “joint venture” in the name of Appellant’s limited liability company did not allow Appellant to circumvent the licensing requirement for limited liability companies. Appellant, on the other hand, avers that it is not required to hold a license separate from that of its component companies because each company holds a contracting license.
 

 Appellant supports its contention with
 
 J. Caldarera & Company, Inc. v. Hospital Service District No. 2 of the Parish of Jefferson,
 
 97-1025, p. 2 (La.App. 5 Cir. 2/11/98), 707 So.2d 1023, 1026, wherein Manhattan Construction Company (Manhattan) was a licensed contractor in the State of Louisiana, and Gibbs Construction Company (Gibbs) was a licensed contractor in the State of Louisiana. Manhattan and Gibbs submitted a bid as a joint venture, “Manhattan/Gibbs, A Joint Venture.”
 
 Id.
 
 at p. 7, 707 So.2d at 1026.
 

 |7In
 
 Caldarera,
 
 the Louisiana Supreme Court stated:
 

 “... we believe that the trial court correctly interpreted the applicable law to provide that a joint venture is properly licensed when each of its members holds a valid license and, therefore, that joint
 
 *1073
 
 venture itself is not required to get an additional license.”
 

 Id.
 

 Further, Appellant notes that the
 
 Calda-rera
 
 case was decided prior to the 1997 amendment to La. R.S. 37:2150.1(9); at that time, the definition of “person” included “joint venture.” Appellant likens the OPCSO’s argument here to that of the plaintiff in
 
 Caldarera,
 
 where the Court rejected the plaintiffs contention that because the statute provided that a “joint venture” is a “person,” and because a “person” must be licensed, the joint venture must have its own license before it can bid on a public project.
 

 We find the matter
 
 sub judice
 
 distinguishable from
 
 Caldarera.
 
 Unlike
 
 Calda-rera,
 
 at present, the definition of “person” in La. R.S. 37:2150 et seq. does not include “joint venture.” La. R.S. 37:2150 et seq. currently provides that a “person” includes a “limited liability company.” Administrative Rule 1103 on joint ventures applies “[wjhen two or more contractors bid as a joint venture on any project in the amount of $50,000.00 or more, not in conflict with R.S. 37:2150 et seq.” (Emphasis added).
 

 According to the basic rules of statutory construction, when written law is clear and unambiguous, and its application leads to no absurd consequences, the law shall be applied as written. La. Civ.Code Art. 9;
 
 Rosenbush Claims Service, Inc. v. City of New Orleans,
 
 94-2223 (La.4/10/95), 653 So.2d 538, 544. Moreover, the legislature is presumed to have enacted a statute in light of the preceding statutes of the same subject matter and court decisions construing those |8statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law.
 
 Rosenbush Claims Service, Inc. v. City of New Orleans,
 
 94-2223 (La.4/10/95), 653 So.2d 538, 544;
 
 Helmerich & Payne, Inc. v. Stephens,
 
 569 So.2d 21, 23 (La.App. 4th Cir.1990).
 

 Reading the statutes
 
 in pari materia
 
 with the administrative rule, we find the matter before us in direct conflict with the requirements of La. R.S. 37:2150 et seq. While the limited liability company’s name contains the words “joint venture,” including the words “joint venture” in a name does not necessarily make it such. Further, while a joint venture is not required to get an additional license to be deemed a responsible bidder under the Public Works Act, a limited liability company is required to hold a license.
 

 Lemoine/Brasfield captioned their effort a “joint venture” and formed a limited liability company. Under the instant facts, the formation of this new legal entity made Lemoine/Brasfield subject to the requirements set forth under public bid law for limited liability companies.
 

 We find that the trial court correctly interpreted the applicable law to provide that under the instant facts, a limited liability company is required to obtain a license although its name contains the words “joint venture.” Appellant formed a limited liability company, which made it a “person.” State bid law and state contracting law require that the entity that is awarded the contract be licensed, and the limited liability company at issue did not meet this requirement. Lemoine/Brasfield is thus a non-licensed bidder, and we find that the OPCSO did not act arbitrarily or unfairly in disqualifying Lemoine/Bras-field. We therefore find no error in the trial court’s judgment.
 

 ^DECREE
 

 We conclude that the OPCSO acted in a fair and legal manner and not arbitrarily in disqualifying Lemoine/Brasfield. For the foregoing reasons, we affirm the trial
 
 *1074
 
 court’s judgment dismissing all of the claims of Lemoine/Brasfield against the OPCSO.
 

 AFFIRMED.