405 So.2d 600 (1981)
Jefferson DEBLIEUX, et al., Plaintiffs-Appellants,
v.
P. S. & SONS PAINTING, INC., et al., Defendants-Third Party Plaintiffs-Appellants,
The Department of Transportation and Development, Third Party Defendant-Appellee.
No. 8369.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1981.
*601 Thomas & Dunahoe, G. F. Thomas, Jr., Natchitoches, for plaintiff-appellant-appellee.
Watson, Murchison, Crews, Arthur & Corkern, Ronald Corkern, Natchitoches, for defendants-appellees-appellants.
James B. Frederick, Jr., Baton Rouge, for third party defendant-appellee.
Before CULPEPPER, DOMENGEAUX, and DOUCET, JJ.
DOMENGEAUX, Judge.
Plaintiffs, Jefferson DeBlieux and his sister, Lucille DeBlieux Kelly, brought this suit against defendants, P. S. & Sons Painting, Inc., and its public liability insurer, National Indemnity Company, seeking damages resulting from the alleged poisoning of their cows by defendant P. S. & Sons Painting, Inc. The defendants by third party action against the State of Louisiana, through the Department of Transportation and Development, seek judgment against the State for any amount of damages assessed against the defendants in favor of plaintiffs. The district court granted plaintiffs judgment in the amount of $11,439.22 against the original defendants, and denied those defendants' third party action against the Department of Transportation and Development. Both the plaintiffs and the original defendants have appealed. In essence the plaintiffs seek increased and additional damages, and in the event judgment in favor of the plaintiffs is affirmed, defendants seek full indemnification or, alternatively, contribution from the State of Louisiana.
The issues presented on appeal are:
(1) Do plaintiffs have a right to raise allegations on appeal against third party defendants when plaintiffs failed to amend their original petition to include third party defendants as direct defendants in their suit?
(2) Do the indemnity and hold harmless provisions in the contracts executed by defendants indemnify the Department of Transportation from liability in this case?
(3) Has the trial court abused its discretion in awarding damages?
Plaintiffs are equal owners in indivision of a tract of land situated on both sides of Louisiana Highway 6 at Grand Ecore, Louisiana. The property is the site of the east terminal of the Grand Ecore Bridge over Red River. The bridge is anchored on the lands of the plaintiffs pursuant to an easement granted the state in 1955. For approximately twenty-five years plaintiffs have conducted a cattle raising operation on the property.
On or about September 4, 1979, the defendant painting contractor, under a contractual agreement with the State of Louisiana, began to remove old paint from the bridge structure and repaint it. The Louisiana Standard Specifications for Roads and Bridges requires that the old paint be removed by sandblasting to the extent that the metal reflects a "near white" finish. The paint removed from the bridge and the paint the contract called for in repairing the bridge were both lead-based and known to be toxic to animals and humans. The *602 sandblasting of the old paint and/or the spraying of the new paint caused considerable deposits of the toxic paint and paint chippings to settle on the grass immediately under the bridge and for some distance therefrom in areas where the cattle grazed.
Soon after the work began, plaintiffs discovered that the cattle began to show symptoms that were later diagnosed by the veterinarian as lead poisoning. Before the cattle could be pastured in another area the plaintiffs lost fourteen head of common grade cows and eleven head of common grade calves. Upon advice of the veterinarian the remainder of the herd was temporarily quarantined. When the quarantine was lifted plaintiffs decided to get out of the cattle business and sold the remainder of their herd.
Plaintiffs on appeal ask for relief against third party defendant under Louisiana Constitution 1974, Article I, Section 4. Plaintiffs contend that the damage to their land amounts to an expropriation by the State entitling the plaintiffs to attorney's fees as provided for in the 1974 Louisiana Constitution. For the reasons hereinafter stated, we find it unnecessary to address this expropriation issue. The plaintiffs raise this issue on appeal against third party defendant, the Department of Transportation and Development, even though the plaintiffs failed to amend their petition to include the third party defendant as a direct defendant below. The issue of whether a trial court may render a judgment against a third party defendant and in favor of a plaintiff, where the plaintiff has not amended his petition to include the third party defendant as a direct defendant in the plaintiff's action, was considered in Heckel v. Travelers Insurance Company, 340 So.2d 363 (La.App. 1st Cir. 1976), and Ferrantelli v. Sanchez, 90 So.2d 351 (Court of Appeal, Orleans, 1956). Those courts held that under LSA C.C.P. Article 1111 it was necessary that the plaintiff amend his petition to include third party defendant as a direct defendant before judgment could be rendered in favor of the plaintiff and against the third party defendant. A judgment prohibited on the trial court level is obviously prohibited on appeal, therefore, the constitutional relief sought by plaintiffs on appeal is improperly before this court.
The next issue is whether the Department of Transportation and Development escapes liability by way of the hold harmless and indemnity clauses executed by defendant painting contractor. The principal contract does not provide an exculpatory clause. However, it does refer to and incorporate by reference the 1977 edition, Louisiana Standard Specifications for Roads and Bridges. Section 811.03 of those Standard Specifications informs the contractor that the contract calls for The Basic Lead Silico Chronmate Paint System. Section 811.06 requires that "all metal surfaces to be painted or coated should be cleaned by blast cleaning in accordance with the Near White Blast Cleaning Method." Section 811.07 provides the following:
"Protection of the public and work. The contractor shall protect all parts of the work against disfigurement by spatters, splashes, and smirches of paint or of paint materials. The contractor shall be responsible for any damage caused by his operations to vehicles, persons, or property, including plants and animals; he shall provide protective measures at his expense and prevent such damage ..."
The contractor further adopts Section 107.16 Responsibility for Damages Claims, which states:
"The contractor shall indemnify the Department, its officers and employees from all suits, actions or claims of any character brought because of any injuries or damage received or sustained by any person or property on account of the operations of said contractor; or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; or because of any negligent act, omission or misconduct of said contractor;..."
The State also requires that the contractor apply for and obtain a contractor's bond. The form for this bond is supplied by the *603 Department of Transportation and Development. The final page of the contractor's bond reiterates the indemnity provision and particularly adds the following "hold harmless" language:
"P. S. & Sons Painting, Inc., contractor,... shall indemnify and save harmless said Department of Transportation and Development against any loss or damage of whatever kind and character arising or occasioned by deeds of negligence of said principal, his agents, servants and employees, in the prosecution of the work, or by reason of improper safeguards or incomplete protection to the work; ..."
The trial court held and the record substantiates, that the proximate cause of the death of the plaintiffs' cows resulted from the combined negligence of the defendant painting contractor and the third party defendants, The Department of Transportation and Development. P. S. & Sons Painting, Inc. knew or should have known of the Standard Specifications before they submitted their bid. Before beginning the sandblasting and painting the defendant painting contractor realized the danger involved in removing and applying lead-based paint, but proceeded with the operations, without taking any precautions to exclude plaintiffs' cows from the work area. After the cows began to die P. S. & Sons, Inc.'s foreman was informed by the Department of Transportation and Development's job engineer that lead poisoning was suspected. The Department of Transportation and Development's job engineer requested that the foreman enclose the work area with barbed wire to prevent future grazing near and under the bridge. Both the defendant painting contractor and the Department of Transportation and Development failed to take any precautions. No protective wire was installed, the cows continued to graze in the work area, and as a result more of plaintiffs' cows died of lead poisoning.
Defendants contend that the law prohibits a principal (state) to exculpate itself from liability by the employment of an independent contractor, when the work is inherently or intrinsically dangerous. The defendant cites Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La.App. 1st Cir. 1978) to support their contention. In Ewell, supra, the court said:
"Ordinarily, an employer is not liable for offenses of an independent contractor committed in the course of performing his duties under the contract. An important exception to this rule, which has been recognized in this State, is that if the work is inherently or intrinsically dangerous, unless proper precautions are taken to avoid injury, the employer cannot avoid liability by letting the work out to an independent contractor.
Our courts have also concluded that if the work is such that no precautions will render it completely safe, there can be no shifting of liability. Where an available safe method, which includes the taking of adequate precautions, will render it at least ordinarily safe, and the work is done in an unsafe manner, the employer would be liable if he has expressly or impliedly authorized the particular manner which will render the work unsafe, and not otherwise."
In Ewell, supra, the defendants sought to exculpate themselves by simply relying on the general rule that the employer is not responsible for the acts of his independent contractor. In this case, however, the Department of Transportation and Development relies on the specific language of its contract with the contractor contained in Sections 811.07 and 107.16, supra. The record in this case does not support the conclusion that the painting contract by P. S. & Sons Painting, Inc. cannot be done safely. Furthermore, Section 811.07 places a responsibility for securing protective measures on the defendant at his expense. Section 811.07 additionally places responsibility on defendant for "any damages caused by his operation to property, including plants and animals."
The effect to be given to the indemnity and hold harmless agreements under consideration in the present matter depends upon the intentions of the parties, which is the foremost requirement in the interpretation *604 of any contract. LSA C.C. Article 1945. Although the indemnification and hold harmless clauses do not contain the words "even though caused by the negligence of indemnitee", they could be interpreted to require indemnitor to indemnify indemnitee against its own negligence. Polozola v. Garlock, 376 So.2d 1009 (La.App. 1st Cir. 1979). We find that, considering the terms of the contract between P. S. & Sons Painting, Inc. and the Department of Transportation and Development (Sections 811.07 and 107.16, supra), coupled with the terms of the indemnity contract (supra), it seems clear that even though the Department of Transportation and Development was found negligent, P. S. & Sons, Inc.'s intention was to indemnify the Department of Transportation and Development from any liability resulting from defendant's performance of the work contract.
The Court now turns its attention to the issue of damages. Absent an initial determination that the trial court's very great discretion in the award of damages has been abused under the facts of this case, the reviewing Court should not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979); Reck v. Stevens, 373 So.2d 498 (La.1979).
Under our jurisprudence general damages for mental anguish are appropriate where plaintiff's injuries result from civil trespass upon his land. Scarbrock v. Fowler, 317 So.2d 285 (La.App. 3rd Cir. 1975); Hayward v. Carraway, 180 So.2d 758 (La.App. 1st Cir. 1965). Jefferson DeBlieux's uncontradicted testimony shows that he is a 76 year old man who for the last twenty-five years devoted much of his spare time to his and his sister's cattle raising operation. Plaintiff further testified that during this incident most of his time was spent trying to determine the cause of his cows' deaths as well as trying to do something about it. It is evident that he suffered great frustration while watching his cattle die for no apparent reason, and being able to do nothing about it. Accordingly, we amend the trial court's award to include $3,000.00 for mental anguish to plaintiff Jefferson DeBlieux. The other plaintiff, Lucille DeBlieux Kelly, did not testify, therefore, we are unable to determine whether an award for mental anguish in her favor would be appropriate.
Plaintiffs additionally ask for damages due to loss of timber, loss of clearing land, loss of value of barn, and loss of plaintiff's income from time missed at work. We have reviewed the record and find no abuse of discretion on behalf of the trial court in refusing compensation for these claims. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
For the reasons assigned, the judgment appealed from is amended so as to award plaintiff, Jefferson DeBlieux, the additional sum of $3,000.00 for mental anguish. In all other respects, the judgment is affirmed. Interest on all sums inures from date of judicial demand. Costs of this appeal are taxed one-half (½) to plaintiffs and one-half (½) to defendants.
AFFFIRMED, AS AMENDED.